# EXHIBIT B

NO. _____

| | |
|---|---|
| ALEXANDRA LOZANO IMMIGRATION LAW, PLLC<br><br>Plaintiff,<br><br>v.<br><br>JUAN PABLO DIAZ CUENCA<br><br>and<br><br>MENESES LAW, PLCC<br><br>Defendants. | IN THE DISTRICT COURT OF<br><br>HARRIS COUNTY, TEXAS<br><br>_____ JUDICIAL DISTRICT |

### DECLARATION OF NICOLAS HERRERA

1. My name is Nicolas Herrera. I am over the age of 21 and am competent to testify.

2. All statements are based on my personal knowledge.

3. I am employed as Case Engagement Center Senior Manager with Alexandra Lozano Immigration Law, PLLC ("ALIL"). My primary job duties in that role include developing and executing sales strategies for pre-intake and intake processes, including creating sales materials and providing support. I collaborate with the marketing team to ensure alignment in our overall goals. I also lead efforts in customer acquisition and retention and I set revenue targets. Finally, I optimize resources, build and manage teams, implement growth initiatives, and foster collaboration among departments, in addition to taking on other duties as assigned.

1

4. I am primarily based out of the firm's subsidiary Quetzal, in Bogotá, Colombia.

5. I first started working for ALIL in or around April 2021 in Bogotá. I spent time in the United States working for ALIL in Washington for just over one year, from 2022 to 2023. I then returned to Bogotá.

6. During my time with ALIL, I worked directly with Juan Pablo Diaz Cuenca ("Diaz"). Diaz was hired in or around May 2021, in Bogotá, Colombia, as an independent contractor. Diaz was then hired as a full time employee and moved to Washington to work for ALIL, first as a Paralegal, and then as the Legal Line and Support TEAMS Senior Manager.

7. While Diaz was based in Washington, he traveled to Bogotá several times to oversee ALIL opening a brick and mortar office and to lead trainings of employees at our newly opened office.

8. Diaz was extremely familiar with many, if not all, of the Bogotá-based ALIL employees, and knew ALIL's compensation structure for all of ALIL's offices, as well as confidential information regarding ALIL's operations and growth strategies for its U.S. based and Bogotá-based operations.

9. In or around November 2023, Diaz's employment with ALIL was terminated.

10. Several of my colleagues are friends with Diaz on several social media websites and see him post frequently across social media platforms, including WhatsApp, Instagram, and LinkedIn. My colleagues bring up the fact that Diaz is active on social media, and show his social media posts to me.

11. In or around January or February 2024, my colleague showed me that Diaz posted a picture of himself with a caption indicating he was on a private jet owned by Meneses Law, PLLC ("Meneses Law") and traveling to Colombia.

12. Before this time, to the best of my knowledge, Meneses Law did not have any operations in Colombia.

13. After this picture was posted, in or around March 2024, Diaz started contacting ALIL employees, notifying them that Meneses Law had open employment positions in Colombia, and encouraging them to apply and interview for a job with Meneses Law.

14. Another former ALIL employee, Sonia Peñarete, also began contacting ALIL employees, notifying them of available positions in Colombia with Meneses Law.

15. I learned about these contacts from ALIL employees who told me they were being contacted by Diaz and Peñarete. I was also shown posts and reposts from Diaz on WhatsApp and Instagram regarding hiring and employment opportunities at Meneses Law.

16. In offer letters and contracts Meneses Law has sent to ALIL employees, which I have reviewed, Meneses Law appears to be offering slightly more in compensation to potential employees than ALIL offers. I believe Diaz used his insider-knowledge from ALIL regarding compensation to create these offers to ALIL employees.

17. After Diaz began soliciting ALIL employees in Bogotá, we noticed an increase in employees resigning from ALIL, then going to work for Meneses Law.

Specifically, eighteen (18) individuals have left employment with ALIL and started working with Meneses in the same or similar role they held while at ALIL.

18. Meneses Law has hired away most of our Human Resources team, who are actively listing job postings on social media, such as LinkedIn.

19. Meneses Law has also hired critical ALIL employees who had comprehensive knowledge of and helped develop ALIL's Key Performance Indicators ("KPIs") and ALIL's internal metrics that we use to measure performance and effectiveness—crucial data that affects our customer service and client retention. I believe these employees are now using the same KPIs and metrics developed for ALIL, at Meneses Law.

20. Meneses Law also hired Diaz's wife, Laura Catalina Rodriguez, who worked for ALIL in Washington. Rodriguez was a Data Analyst Team Lead, and helped develop and then oversee the dashboards we currently use to track employee performance metrics and KPI attainment. Indeed, Rodriguez was in charge of all of the data management tools we used. I believe she is now using these tools at Meneses Law.

21. On or about March 30, 2024, I saw a post on social media reflecting an April 10, 2024, Meneses Law held a job fair in Bogotá which was advertised by Diaz. A true and accurate copy of this advertisement is attached as Exhibit 1 to this Declaration.

22. Some ALIL employees went to the advertised job fair and told me they had been interviewed by Meneses Law, while other ALIL employees were

> encouraged to quit their jobs with ALIL and then interview with Meneses Law. The ALIL employees who attended the job fair explained that Diaz was leading the interviews at the job fair himself and appeared to be Meneses Law's point of contact at the job fair. It was clear Diaz was in charge of the operations at the job fair.

23. It is my understanding that at least seven ALIL employees applied for jobs with Meneses Law at the job fair, and at least one ALIL employee who attended the job fair has now resigned from ALIL.

24. In addition to witnessing Diaz and Meneses Law solicit ALIL employees, I have seen photos of Diaz using ALIL's training materials to train Meneses Law employees. I received a photo from an ALIL employee whose partner went to work for Meneses Law and took the photo during a Meneses Law training lead by Diaz. A true and accurate copy of a photo of one such training is attached to this Declaration as Exhibit 2. In this photo, I personally recognize Diaz and the power point presentation – both the language used and the font – as ALIL's own power point training presentation.

25. I have also listened to recorded audio from a Meneses Law training in which the person leading the training, who was reading from training materials, accidentally referenced "ALIL" in the training, leading me to believe that Meneses Law is using ALIL's training materials. This audio was sent by the same person who sent the photo in Exhibit 2.

26. My birthdate is March 10, 1993, and my address is 98 #19a-45, Apt. 403, Bogotá, 110111, Colombia. I execute this Declaration consistent with Texas

Civil Practice and Remedies Code § 132.001 and I declare under penalty of perjury under the laws of the United States of America and the State of Texas that the foregoing is true and correct.

_____
Nicolas Herrera

Executed in the city of Bogotá, in the country of Colombia, on the 21 day of May, 2024

# EXHIBIT 1



# EXHIBIT 2

