# EXHIBIT D

## RESTRICTIVE COVENANT AGREEMENT

This Restrictive Covenant Agreement (the "Agreement"), is made and entered into this 14 day of 08 , 2023, by and between Juan Diaz Cuenca ("Employee") and Alexandra Lozano Immigration Law, PLLC (the "Company").

1.      Consideration. As to only those individuals currently employed by the Company when they sign this Agreement, in consideration for such current employee's acceptance of this Agreement, the Company will provide all such current employees who sign this Agreement with an additional amount of paid time off days beyond what current employees are entitled by applicable Company policy to take. Specifically, each current employee who signs their acceptance to both this Agreement and the Mutual Dispute Resolution Agreement contemporaneously provided to employees along with this Agreement, will be provided four (4) days (or, if employed by the Company on a part-time basis, a pro-rata number of days based on their regular schedule as compared to a full-time employee) of paid time off to be taken during the final week of the 2023 calendar year (between the Christmas holiday and up to and including New Year's Eve). If, however, a current employee signs only this Agreement and not the Mutual Dispute Resolution Agreement (or vice versa), the employee will only receive two (2) days of paid time off (or pro-rata share for part-time employees) to be taken during the final week of the 2023 calendar year. If the current employee signs neither this Agreement nor the Mutual Dispute Resolution Agreement, no additional paid time off days will be provided.

2.      Confidential Information.

a.      "Confidential Information" means information that: (i) is disclosed to Employee or of which the Employee becomes aware as a consequence of or through Employee's employment with the Company, (ii) is not generally known outside of the Company, (iii) has value to the Company, (iv) relates to the business of the Company, and (v) could be damaging to the Company's business if disclosed to or used by others.  Such information may include, but is not limited to, data and information with regard to business plans, trade secrets, finances, records, personnel, designs, marketing, customers and customer lists, customer requirements, sales, products, systems, processes, trade secrets, methods, know-how, sales methodologies, training methodologies, sales channels, product development plans and/or pricing (collectively, "Confidential Information").  The Company agrees to provide Employee with access to such Confidential Information as is necessary to perform Employee's duties for the Company.

Confidential Information does not include information in the public domain or information that is generally known and used within the industry or industries in which the Company engages in business (unless such information entered the public domain and/or became known within the industry through any improper, unauthorized and/or inadvertent disclosure). Confidential Information also does not include information protected from disclosure by the National Labor Relations Act (or other federal or state law) and, for example, does not include information about the terms and conditions of non-management employees' employment at the Company that comes to Employee's attention in the normal course of Employee's employment, but Confidential Information does include information in the Company's non-public records and files.

b.     Subject to the provisions of Paragraph 8, below, Employee acknowledges and agrees that all Confidential Information is proprietary to the Company and is a valuable, special and unique asset of the Company, and that any disclosure or unauthorized use of Confidential Information will cause irreparable harm and loss to the Company. Employee understands and acknowledges that each and every component of the Confidential Information (i) has been developed by the Company at significant effort and expense and is sufficiently secret to derive economic value from not being generally known to other parties, and (ii) constitutes a protectible business interest of the Company.

c.     Employee acknowledges and agrees that the Company owns the Confidential Information. Employee agrees not to dispute or deny any such ownership rights at any time.

d.     Subject to the provisions of Paragraph 8, below, throughout Employee's employment with the Company: (i) Employee will hold all Confidential Information in the strictest confidence, take all reasonable precautions to prevent its inadvertent disclosure to any unauthorized person, and follow all the Company's policies protecting the Confidential Information; (ii) Employee will not, directly or indirectly, utilize, disclose or make available to any other person or entity, any of the Confidential Information, other than in the proper performance of Employee's duties during Employee's employment with the Company; and (iii) Employee will not use the Company's Confidential Information to attempt to solicit, induce, recruit, or take away clients, suppliers or customers of the Company.

e.     Subject to the provisions of Paragraph 8, below, during the two-year period immediately following the end of Employee's employment with the Company, Employee will not, anywhere in the United States, directly or indirectly (i) utilize, disclose, or make available to any other person or entity, any of the Company's Confidential Information; or (ii) use the Company's Confidential Information to attempt to solicit, induce, recruit, or take away clients, suppliers or customers of the Company. Employee understands and agrees that the time and territory limits on this restriction do not apply to trade secrets (discussed below), which are protected by law.

f.     Employee acknowledges that some of Company's Confidential Information may also qualify as trade secrets as defined by governing state law. Employee acknowledges and agrees that nothing in this Agreement diminishes or reduces Employee's obligations under trade secret law to continue to protect the Company's trade secrets after the end of Employee's employment, and to not use or disclose such trade secrets for as long as they remain protected by law.

3.     Return of Company Property. At the request of the Company or upon cessation of Employee's employment with the Company for any reason, Employee will immediately deliver to the Company all property of the Company that is then in Employee's possession, custody or control, including, without limitation, all keys, access cards, cellular or smart phones, computer hardware (including but not limited to any hard drives, diskettes, laptop computers and personal data assistants and the contents thereof, as well as any passwords or codes needed to operate any such hardware), computer software and programs, data, materials, papers, books, files, documents, records, policies, client and customer information and lists, rolodexes, financial data, marketing information, design information, specifications and plans, database information and lists, mailing lists, notes, and any other property or information relating to the Company.

2

4.    Non-Solicitation of Customers.

a.    Subject to the provisions of Section 6, below, during the Restricted Period, other than in the proper performance of Employee's duties while employed by the Company, Employee shall not, directly or in concert with others (whether as owner, officer, partner, principal, joint venturer, shareholder, director, member, manager, investor, agent, employee, or otherwise) sell, promote or provide, or attempt to sell, promote or provide, any Competitive Products and Services to any Restricted Customer.

b.    Employee has carefully read and considered the provisions of this Agreement and agrees that the restrictions set forth in Paragraph 4 are reasonable and necessary in order for Company to protect its Confidential Information and trade secrets and are fair in that they do not prohibit Employee from continuing to be employed in Employee's chosen field of work.

c.    For purposes of this Agreement, the following definitions apply:

(i)    "Competitive Products and Services" shall mean products or services that serve one or more of the same functions as, or could be used to replace, in whole or in part, products or services which the Company offered to customers at the time Employee's work with the Company ended or which the Company was actively preparing to sell or provide during such time.

(ii)    "Material Contact" means: (1) Employee sold products or services to the customer or client; (2) Employee personally provided services to the customer or client; (3) Employee supervised those who sold products or provided services to the customer or client and had business-related discussions with the customer or client on behalf of the Company; or (4) Employee received Confidential Information in the ordinary course of business about the customer or client.

(iii)    "Restricted Customer" means any person or entity (1) which was a customer or client of the Company during the one-year period ending on Employee's last day of employment and (2) with which Employee had Material Contact during such period.

(iv)    "Restricted Period" means during Employee's employment and for the one-year period immediately following the cessation of Employee's employment with the Company for any reason.

5.    Non-Solicitation of Employees.  Subject to the provisions of Paragraph 6, below, Employee agrees that during the Restricted Period, Employee shall not seek to influence or induce to leave the Company's employment or service, any person (a) who was employed or otherwise engaged by the Company at any time during the twelve (12) months ending on Employee's last day of employment with the Company and (b) with whom Employee had Material Contact during such period.  For purposes of this Paragraph 5, "Material Contact" means: (i) Employee supervised such person or was otherwise in such person's chain of command; (ii) Employee regularly worked with the person on behalf of the Employer; or (iii) Employee received Confidential Information in the ordinary course of business about the person.

3

6.      Limitations on Non-Solicitation Obligations. Notwithstanding the foregoing, if Employee's annualized earnings from the Company do not exceed $116,593.18,[1] then: (1) the obligations and restrictions set forth in Paragraphs 4 and 5 of this Agreement that apply during Employee's employment with the Company shall only be applicable to Employee to the extent they are consistent and coextensive with Employee's common law duties (including the duty of loyalty), statutory duties, and duty to avoid conflicts of interest and/or to the extent they relate to a prohibition on the use or disclosure of the Company's Confidential Information or trade secrets; (2) the obligations and restrictions set forth in Paragraph 4 of this Agreement that apply following the cessation of Employee's employment with the Company shall only prohibit Employee from directly or indirectly soliciting any customer of the Company to cease or reduce the extent to which it is doing business with the Company and/or to the extent they relate to a prohibition on the use or disclosure of the Company's Confidential Information or trade secrets; and (3) the obligations and restrictions set forth in Paragraph 5 of this Agreement that apply following the cessation of Employee's employment with the Company shall only prohibit Employee from directly or indirectly soliciting any employee of the Company to leave the Company and/or to the extent they relate to a prohibition on the use or disclosure of the Company's Confidential Information or trade secrets.   In addition, even if Employee makes more than $116,593.18 per year in earnings from the Company, the post-employment obligations and restrictions set forth in Paragraphs 4 and 5 of this Agreement that are in addition to those described in this Paragraph 6 shall not apply to Employee following Employee's separation from the Company if Employee is terminated by the Company as the result of a layoff, unless the Company, at its sole option, elects to pay Employee compensation equivalent to Employee's base salary at the time of termination for the post-employment restricted period, less any compensation earned by Employee through subsequent employment during that period.

7.      Enforcement. Employee acknowledges and agrees that to the extent any form of legal action is required to enforce any of Paragraphs 2 through 5 above, the Company shall be entitled to recover its reasonable costs and attorney's fees to the extent the Company is the prevailing party. The Company will be considered the "prevailing party" if the Company obtains any form of partial or complete injunctive relief, whether temporary, preliminary, or otherwise. The parties understand and agree that nothing in the Agreement is intended to or shall operate to alter, denigrate, or deny Employee the rights and remedies set forth in RCW 49.62.080. If any part of this Agreement is held void or unenforceable, every other term of this Agreement shall remain valid and fully enforceable.  If any court refuses to enforce any part of this Agreement as written,

---

[1] The term "earnings" as used in this Paragraph 6 means the compensation reflected on box one of Employee's United States internal revenue service form W-2 that is paid to Employee over the prior year, or portion thereof for which Employee was employed, annualized and calculated as of the earlier of the date enforcement of the provisions in this Agreement are sought or the date of Employee's separation from employment with the Company. The $116,593.18 figure referenced in this Paragraph 6 is current through December 31, 2023, but is deemed to be automatically adjusted for inflation on an annual basis in accord with the adjustments specified in RCW 49.62.040 (or any successor statute).

4

the court shall, if permitted by applicable law, modify that part to the minimum extent necessary to make it enforceable under applicable law and shall enforce it as so modified.

8.    Authorized Disclosures. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against the Company for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Nothing contained in this Agreement prohibits or prevents Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblowing proceeding or other proceeding before any federal, state, or local government agency, *e.g.* the EEOC, NLRB, SEC, etc., or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. The Company further acknowledges Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights. The Company also acknowledges Employee's rights to make truthful statements or disclosures about unlawful employment practices which are defined to mean any form of unlawful discrimination, harassment, or retaliation that is actionable under Title VII of the Civil Rights Act of 1964 or any comparable state statue or any other related federal or state rule or law that is enforced by the Equal Employment Opportunity Commission or a comparable state agency. For the sake of clarity, nothing in the Agreement is intended to or shall prevent Employee from disclosing information that Employee has a right to disclose under applicable law, including but not limited to, Employee discussing or disclosing: (i) Employee's own compensation information with other employees, or with third parties who are not future employers or competitors of the Company; and (ii) information relating to conduct that Employee reasonably believes to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy. This Agreement shall not be construed to limit Employee's rights under the National Labor Relations Act including, but not limited to, the right to engage in protected concerted activity, including discussing terms and conditions of employment with coworkers, and attempting to improve terms and conditions of employment through channels outside the immediate employee-employer relationship, such as through the National Labor Relations Board.

9.    Entire Agreement. This Agreement constitutes the entire Agreement and understanding between the parties with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements or representations by or between the parties, written or oral, which may have related in any manner to the subject matter hereof. No other agreement or amendment to this Agreement shall be binding upon either party including, without limitation, any agreement or amendment made hereafter unless in writing, signed by both parties.

10.    Successors and Assigns. This Agreement may be freely assigned by the Company and is fully enforceable by any successor in interest to the Company. Employee hereby gives

5

Employee's consent to any such assignment. Employee shall not assign any of Employee's rights, powers, duties, or obligations hereunder.

11.    Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the state in which Employee worked for the Company at the time Employee signs this Agreement without regard to its conflict of laws provision. In the event Employee is deemed to be a Washington-based employee for purposes of this Agreement, then this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Washington.

12.    Counterparts. This Agreement may be executed in two or more counterparts, each of which when executed and delivered shall be deemed an original and all of which, taken together, shall constitute the same agreement. This Agreement and any document or schedule required hereby may be executed by facsimile signature, electronic signature or PDF format, which shall be considered legally binding for all purposes.

13.    Notifications To Third Parties. Employee agrees that during my employment with the Company and for a period of twelve (12) months after the cessation of Employee's engagement with the Company, Employee will provide a copy of this Agreement to any person or entity with which Employee seeks employment or engagement prior to the commencement of any such employment or engagement, and agrees that the Company may notify any such person or entity of this Agreement.

14.    Disclosure of Existing Obligations. Except as Employee has disclosed in writing at the end of this Agreement, Employee is not bound by any agreement or obligation that directly or indirectly: (i) restricts Employee from using or disclosing any confidential information of any person or entity in the course of Employee's employment with the Company; (ii) restricts Employee from competing with, or soliciting actual or potential customers or business from, any person or entity; (iii) restricts Employee from soliciting any current or former employees of any person or entity; or (iv) limits Employee's ability to perform any assigned duties for the Company. Employee represents that Employee does not possess any confidential information or trade secrets of any entity other than the Company, including any prior employers of Employee. Employee acknowledges and agrees that Employee can perform Employee's job duties on behalf of the Company without using or relying upon any confidential information or trade secrets of any other entity, including any prior employer, and the Company hereby instructs Employee not to use or rely upon any such confidential information or trade secrets.

15.    Knowing and Voluntary. Employee acknowledges that Employee has read, understood, and accepts the provisions of this Agreement. The Company is hereby advising Employee, in writing, to consult with an attorney before signing this Agreement. Employee is further advised that Employee has thirty (30) calendar days to review this Agreement before signing it.

6

EMPLOYEE                                    THE COMPANY

*Juan Diaz Cuenca*                          *Alejandro Mata*

Print: Juan Diaz Cuenca                     Print: Alejandro Mata

Date: Aug 14, 2023                          Title: Chief Human Resources Officer

                                            Date: July 19, 2023

## DISCLOSURES