1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF TEXAS

3                        HOUSTON DIVISION

4    ALEXANDRA LOZANO IMMIGRATION LAW, PLLC, .
                                             .
5                                            .
                Plaintiff,                   .
6                                            .   Civil Action
     VS.                                     .   No. H-24-cv-2190
7                                            .
     MENESES LAW FIRM, PLLC, et. al.,        .   Houston, Texas
8                                            .   September 3, 2024
                                             .   11:00 a.m.
9                Defendants.                 .
     . . . . . . . . . . . . . . . . . . . . .

10                  TRANSCRIPT OF PROCEEDINGS

11              BEFORE THE HONORABLE ANDREW S. HANEN

12                      TELEPHONE CONFERENCE

13   APPEARANCES:

14   FOR THE PLAINTIFF:

15           Ms. Kirsten Fraser
16           ORGAN LEGAL, LLP
             1330 Dublin Road
17           Columbus, Ohio 43214
             614.481.0900
18           FAX:  614.481.0904
             kfraser@organlegal.com
19
             Ms. Pamela Linberg
20           JACKSON LEWIS, PC
             717 Texas Avenue
21           Suite 1700
             Houston, Texas  77002
22           713.568.7871
             FAX:  713.650.0405
23           Pamela.Linberg@jacksonlewis.com

24
            PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
25      TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

```
 1                          APPEARANCES

 2                          (continued)

 3   FOR THE DEFENDANT MENESES:

 4           Mr. Jason S. McManis
             AHMAD, ZAVITSANOS & MENSING, PLLC
 5           1221 McKinney Street
             Suite 2500
 6           Houston, Texas 77010
             713.655.1101
 7           FAX:  713.655.0062
             jmcmanis@azalaw.com
 8

 9   FOR THE DEFENDANT JUAN PABLO DIAZ CUENCA:

10           Mr. Ashish Mahendru
             Mr. Darren Braun
11           MAHENDRU, PC
             639 Heights Boulevard
12           Houston, Texas  77007
             713.571.1519
13           FAX:  713.651.0776
             amahendru@thelitigationgroup.com
14

15

16   COURT REPORTER:

17           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8004
18           Houston, Texas  77002
             713.250.5582
19

20

21

22

23

24

25
```

1                        PROCEEDINGS

2                     September 3, 2024

3          THE COURT:  We're on the record.

4               Who do I have on the phone for the plaintiffs?

11:00:46   5          MS. FRASER:  Your Honor, Kirsten Fraser on behalf of

6    plaintiff, Alexandra Lozano Immigration Law.

7          MS. LINBERG:  And Pam Linberg on behalf of plaintiff.

8          THE COURT:  All right.

9               And for the defendants?

11:01:02   10         MR. MC MANIS:  Good morning, your Honor.  This is

11   Jason McManis from AZA on behalf of Meneses Law.

12         THE COURT:  All right.  Let me start off with the

13   defendants.  It was kind of your letter that kicked this off.

14   Why don't you tell me where you are and what you think we need

11:01:19   15   to do.  And then, I'll let the plaintiffs respond.

16         MR. MAHENDRU:  Your Honor, this is Ashish Mahendru on

17   behalf of defendant, Juan Pablo Cuenca Diaz.  Mr. Braun and I

18   are also on the call.  Just wanted to let you know.

19         THE COURT:  Okay.  Thank you.

11:01:38   20              Go ahead, counsel.

21         MR. MC MANIS:  Your Honor, this is Jason McManis.  So,

22   I think there are two kind of overarching issues, at least from

23   our client's perspective.  The first one, on schedule, I can

24   report that the sides have continued to talk about schedule; and

11:01:59   25   we have resolved that dispute for the time being.  And so, I

1   anticipate submitting an amended expedited scheduling order for

2   the preliminary injunction proceeding.  And so, that has been

3   resolved as sort of Issue Number 1.

4           And then, the other key discovery issue from my

11:02:22  5   perspective, your Honor, is the plaintiff has created a forensic

6   image of the computer that Defendant Diaz used while he worked

7   at the plaintiff.  They provided that to a third-party forensic

8   expert who then ran some reports and returned those reports back

9   to the plaintiff.

11:02:49  10           The plaintiff then submitted a declaration

11   relying on the reports from that image.  It's a single month of

12   data from the forensic image -- it's not the complete report --

13   and, you know, without any information about how the analysis

14   was done or, you know, what process was used to do it and

11:03:15  15   without giving us any way to test the results from that forensic

16   image because they won't make it available for our own forensic

17   expert to analyze.

18           This is important because they've made the

19   results of this forensic analysis kind of the central portion of

11:03:37  20   their motion for a preliminary injunction on the trade secret

21   issue claiming that it provides some kind of evidence that

22   Mr. Diaz took something from them on USB drives, et cetera.

23           And so, what we need to be able to do, in order

24   to respond to that, is have our own third-party forensic expert

11:04:04  25   run an analysis where we can see -- we're not asking to access

1    all of the information on the drive.  We need the drive so we

2    can see file name, access dates, you know, web searches,

3    screenshots, those types of things, what -- the activity that

4    was going on so that we can adequately respond to their sort of

11:04:31    5    fact witness who has provided a declaration on something that

6    was done by some of their experts.

7            And so, that's kind of the key dispute right now,

8    is we need access to that forensic image so that we can

9    meaningfully respond.

11:04:47    10    THE COURT:  Mr. McManis, can you get the forensic

11    image you want without getting all of what he downloaded -- I

12    mean, all of what the --

13            THE COURT REPORTER:  I'm sorry, Judge.  I'm having

14    trouble hearing you.

11:05:03    15    THE COURT:  I'm asking if computer-wise is it possible

16    to get the timing and the downloads without getting the entire

17    package.

18            MR. MC MANIS:  So, yes, we can -- what happens in this

19    context is the forensic image gets provided to a third-party

11:05:27    20    company that they run, you know, a forensic software that

21    identifies when each file was accessed or when files were

22    downloaded, et cetera.

23            That doesn't mean that we get copies of all the

24    files that are on the device.  In order to do that, I presume we

11:05:45    25    would have to make some kind of request from the other side for

1  permission to do that; and that would be a separate dispute that

2  we're not really fighting about right now, particularly, because

3  they've already produced all of the screenshots, for example.

4  They produced that information.

11:06:02  5  But we really just need to be able to make our

6  own reports and analysis of what happened on the device and when

7  because that's sort of the crux of their claim that Mr. Diaz

8  took anything in the first place.

9  THE COURT:  Okay.

11:06:19  10  Who wants to respond for the plaintiffs?

11  MS. FRASER:  Your Honor, Kirsten Fraser for the

12  plaintiff.  I'll respond.

13  So, like -- like counsel said, you know, we

14  produced the -- let me back up.  We provided the laptop to a

11:06:37  15  vendor to extract data so that we could see what was going on on

16  this laptop on the last month of Mr. Diaz's employment.

17  The vendor extracted that data.  Our chief

18  information officer viewed that and put it in a declaration,

19  which we attached to our motion for preliminary injunction, that

11:06:58  20  it appeared that six client files had been downloaded and there

21  was some suspicious activity regarding screenshots.

22  It's not the center of our trade secrets claim.

23  As I said in my letter to the Court, you know, it's neither

24  exculpatory, nor inculpatory.  It just is.  It's a piece of

11:07:19  25  evidence.  It's a data point in the entire analysis.

1            So, we provided everything that the vendor gave
2    to us that our internal CIO looked out.  We're going to put our
3    CIO up for a deposition.  I'm happy to also get information in
4    the form of a declaration from the vendor that explains their
11:07:48  5    processes and what they did step by step so that, you know, the
6    defendants can have their own vendor expert, whoever they want
7    to pick, look at that and determine whether or not what was done
8    was consistent or accurate or is there something missing before
9    we take the drastic step of turning over the entire laptop image
11:08:12  10    to the other side for analysis.

11            And here's -- a key issue is that Mr. Diaz worked
12    as a paralegal at our firm.  And so, you know, we need to be
13    able to look at the information that is extracted, no matter
14    what form it's in, to determine that client confidences aren't
11:08:33  15    being breached when we turn it over.

16            And so, that is another problem for why turning
17    over the entire laptop image without the ability to conduct a
18    privilege review ahead of time is problematic.  And again, we're
19    trying to do discovery on an expedited basis in relation to the
11:08:53  20    preliminary injunction motion.

21            I think that, you know, counsel's, you know,
22    concerns about the video or how persuasive it is and so forth
23    goes to the weight of the evidence that the Court can -- can
24    view and analyze it as the Court makes its judgment.

11:09:11  25            THE COURT:  Okay.

1          MR. MAHENDRU:  Your Honor, on behalf of Mr. Cuenca

2     Diaz, could I, as counsel for him, interject slightly?

3          THE COURT:  Go ahead.

4          MR. MAHENDRU:  Thank you.  Ashish Mahendru here, your

11:09:24   5     Honor.  And as a point of personal privilege, thank you for

6     rescheduling the call for today based on my conflict -- I really

7     appreciate that -- from last Friday.

8               If I could zoom out just slightly, your Honor,

9     and kind of give you an overlay of where we, the individual

11:09:43  10     paralegal defendants, see ourselves in this moment; and maybe

11     that will help filter through some of the issues with the image

12     on the hard drive.

13               Clearly, Mr. Cuenca worked at ALIL.  No dispute

14     about that.  While he worked at ALIL, he conducted his

11:10:08  15     day-to-day activities in whatever means, methods, and manner he

16     did.  Part of the tools of that engagement with ALIL was a

17     laptop.  That laptop currently is either with the ALIL expert or

18     with ALIL itself.  We don't know.

19               What ALIL has done is said, "Expert, take the

11:10:30  20     laptop.  We will tell you how much of a look-back period we want

21     you to tunnel into on this laptop" or maybe with collaboration

22     with the expert -- we don't know -- "You give us a report that

23     shows us some amount of activity Mr. Diaz Cuenca was engaged in

24     a month leading up to his termination."

11:11:00  25               And that's the snapshot, basically, that they

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  have provided with the reports generated by the expert, not the

2  -- there are no reports generated by their chief information

3  officer.  So, the bridge is a little bit broken here, your

4  Honor, because the expert images the hard drive, the expert

11:11:23  5  generates a series of spreadsheet reports -- I think there's

6  four or five -- and then the expert turns them over to the chief

7  information officer who becomes the declarant before you, your

8  Honor.

9           Now, where does that leave us?  Where it leaves

11:11:41 10  us is, while they've marked all of this attorney's eyes only,

11  we, as Mr. Diaz Cuenca's lawyers, cannot share the spreadsheets

12  with him because they're marked AEO; we cannot discuss the

13  contents of these spreadsheets even if they're file listings,

14  your Honor.

11:12:07 15           Normally -- and "normally" is in quotes -- if

16  someone is going to image a hard drive and say, "Hey, this is an

17  important piece of information" on a trade secret case or a

18  non-compete case, a file listing of all the files on the laptop

19  would get generated.  And those file listings then become part

11:12:30 20  of a discussion back and forth with plaintiffs and defense

21  counsel over what will be produced or what will not be produced.

22           Here, they skipped over that step, decided only

23  to give a one-month look-back on Mr. Cuenca's activities related

24  to his job -- fingerprints one might call them -- and then said,

11:12:51 25  "Oh, he took a bunch of files.  He downloaded client files," as

1    you just heard counsel say; "He took a bunch of screenshots," as

2    you just heard counsel say, none of which we can discuss with

3    Mr. Diaz Cuenca because it's AEO.

4                But we can't even formulate a picture for you,

11:13:15    5    your Honor, as to what Mr. Diaz Cuenca's day-to-day

6    responsibilities were.  Could it be that in the last 12 months

7    he routinely downloaded client files?  He routinely took

8    snapshots and screenshots.  He routinely tunneled into various

9    information to perform his day-to-day activities.

11:13:35    10                We're completely reined in by a one-month

11    look-back period and can't tell you, for example, that the

12    habit, routine, and practice of Mr. Cuenca was to do these very

13    things routinely without it being laced with trade secret or

14    laced with stealing of confidential information.  Then, you have

11:14:00    15    a very, very myopic view that they will present you, your Honor.

16                But I couldn't even ask Mr. Cuenca since the

17    signing of the agreed protective order:  "On this date in

18    November of 2023, you took a screenshot of Kermit the Frog" --

19    making that up, your Honor -- "Why did you do that?"  I can't

11:14:26    20    tell him he took a picture of Kermit the Frog.  I can't tell him

21    he took a screenshot of it.  Because the minute I disclose that

22    to him, I've violated the AEO.

23                So, it's more than just the image of the hard

24    drive, your Honor.  It's really the substance of what they're

11:14:44    25    claiming.  So, a first step both Meneses Law as a defendant and

1   Juan Pablo Diaz Cuenca as a defendant have requested separately

2   is to get the full image of the hard drive.

3          Once the full image is available to aid forensic

4   expert on our side, just like they have it on their side, we can

11:15:09   5   articulate to our expert, "Hey, give me a snapshot of this.

6   Give me a file listing of this."  Give me -- run me a report

7   that shows me, you know, what devices were connected or

8   disconnected as opposed to simply letting the plaintiff regulate

9   the manner, the method, the means, and the content of the

11:15:32   10   substance that their expert is creating for their view of the

11   case.

12          So, if it is truly goose and gander, we would

13   like the same access to the laptop image that they have.  I

14   appreciate the fact that the laptop may contain -- we don't know

11:15:53   15   yet.  But it may contain client files that are real and Mr. Diaz

16   Cuenca were working on which would contain attorney-client

17   privilege information and their rendering legal advice to, you

18   know, their potential clients.  We appreciate that.

19          I think we got chastised in the letter about not

11:16:17   20   recognizing that potential or possibility from ALIL.  But even

21   if that is the case, your Honor -- I'm about to be quiet in two

22   seconds.  Even if that's the case, that you were rendering legal

23   advice in a client matter and Mr. Cuenca was working on that,

24   the very essence of their dispute is you steal our confidential

11:16:42   25   client information and how we render legal advice and ported it

1  over to Meneses Law.  And when you did that, you violated your

2  non-compete.  You stole our trade secrets.  You stole our

3  confidential information.

4          That, your Honor, I think encapsulates the

11:17:02  5  problem or the discovery dispute writ large for the Court to

6  address because you can't use the privileged information as the

7  basis of your claim, I don't think, as a sword and then shield

8  it at the same time to say "You, defendants, could never see

9  that even if we marked it attorney's eyes only or could mark

11:17:26  10  it."  Because on the image request that we made, which is our

11  Request Number 4, they claim trade secret privilege and

12  attorney-client privilege.

13          So, your Honor, I'm sure you have a series of

14  questions from my brief description; but the problem is patent

11:17:48  15  before the Court; and it's not one that, I don't think, requires

16  a lot of arm-wrestling ultimately if we are provided the image

17  as they have it.

18      THE COURT:  All right.  Here's -- here's what I want

19  to do as an initial step.  First of all, let me say we get in

11:18:10  20  this fight in every trade secret case.  I mean, the plaintiff

21  sues.  "Defendant, you stole my trade secrets."  The first thing

22  the defendant does is say, "What trade secrets did I steal?"

23  The plaintiff responds "Well, if I tell you, I'd have to kill

24  you."  And we get in this fight.

11:18:27  25          Now, this case is a little more complicated; and

1  I think we all recognize that, because we have attorney-client

2  privilege, that overlays the whole thing.  But here's what I'm

3  going to order as an initial step:  I'm going to order the hard

4  drive, to the extent it produces -- it discloses what was

11:18:54  5  downloaded and when it was downloaded, to be made available to

6  the defendants' forensic expert, not the contents of it but what

7  files were downloaded and when they were downloaded that are not

8  required to the defendant --

9           THE COURT REPORTER:  I'm sorry, Judge.  I can't hear

11:19:14  10  you.

11           THE COURT:  I'm ordering that the defendants have

12  access to what was downloaded, not the contents of what files

13  were accessed, and when they were accessed for the month

14  preceding the defendant's leaving the plaintiff's law firm.  Not

11:19:46  15  the contents of the files.

16               So, I accessed Mr. Smith's file.  Okay.  That's

17  not privileged.  Now, what's in Mr. Smith's file might be

18  privileged but the fact that the defendant accessed it or didn't

19  access it.  I think we're going to use that as a starting point

11:20:13  20  and then figure out what we actually have to fight over.

21               And with that information, I'm allowing the

22  defendants to talk to their clients.  So, the defendants and the

23  defense attorneys can go to their clients and say, "Okay.  The

24  evidence shows a week before you left the plaintiff's

11:20:42  25  employment, you accessed Mr. Smith's file.  Why did you do

1  that?"

2         Now, I think they can do that without violating

3  the attorney-client privilege.  And the answer would be, "Well,

4  I, you know, was looking for a form" or "I was working on the

**11:21:03**  5  file" or "I was stealing trade secrets."  I mean, you know --

6  but I think that much we can do without attorney-client

7  privilege coming into play.

8         And let's -- let's do that.  And probably what's

9  going to happen is the defense attorneys are going to come to

**11:21:25** 10  Ms. Fraser and say, "We want to see A, B, and C."  And then,

11  you're going to come back to me, and I'm going to have to figure

12  out how to either allow it or not allow it.

13         Okay.  Anybody have any questions?

14       MR. MC MANIS:  Your Honor, this is Jason McManis on

**11:21:46** 15  behalf of Meneses Law.  So, one issue that Mr. Mahendru raised

16  is sort of the prior conduct of Mr. Diaz and whether he was

17  acting consistent with the way he conducted business always.

18  And so, one month still leaves us with a gap as to what he used

19  to do previously where, if we could go back six months or a year

**11:22:14** 20  with the same level of access, just what he touched and when he

21  touched it, not the contents so we don't implicate any of those

22  other issues, I think would be very important for us to be able

23  to respond to the allegations that have been made.

24       THE COURT:  Well, what allegations -- how far back do

**11:22:34** 25  the allegations go?

1          MR. MC MANIS:  Well, the allegations --

2          MS. FRASER:  If I may, your Honor, the allegations

3    don't go that far back.

4          THE COURT REPORTER:  Is this Ms. Fraser?  Is this

11:22:41  5    Ms. Fraser?

6          MS. FRASER:  Yes.  I'm sorry.

7               The allegations don't go that far back.  Again,

8    this is -- there's plenty of data in one month, which they have;

9    and they can see his activity for a month.  And they have his

11:23:06  10    screenshot activity for the entirety of our -- for, I think, as

11    much as we could pull.  They have that.

12               And so, to the extent that they need to honor --

13    they want to make a case about what his day to day was versus

14    what was determined in the days -- or the day of the actual

11:23:23  15    termination, I really think that information is there.  I don't

16    think six months is necessary, again, especially, for reviewing

17    discovery on an expedited basis in response to a preliminary

18    injunction motion.

19          THE COURT:  Okay.  Here's what I want to do.

11:23:38  20    Obviously, this is the Court.  I'm going to leave it at a month.

21    If you realize -- I mean, the initial goal for all this is to

22    get ready for the preliminary injunction hearing which I will

23    hear.  It won't be the jury.  So, I mean, if it gets in the

24    middle of this and it looks like I didn't allow the defendants

11:23:57  25    enough access, I will know it; and we can adjourn things; and

1  I'll allow it.

2           But right now, let's keep it at a month.  Let's

3  see what a month shows, and let's see how much of a dispute we

4  have over a month.  And I have a lot of these kinds of cases,

11:24:17  5  not necessarily dealing with law firms; but a month usually

6  gives you a pretty good snapshot.

7           MR. MC MANIS:  Your Honor, this is Jason McManis

8  again.  Certainly, we'll do what we can with a month.  I think

9  the problem we have -- and this is from the declaration that

11:24:36  10  they filed -- is they suggest that those -- the number of

11  screenshots Diaz took is highly unusual and this activity does

12  not appear to relate to his official duties.

13           And that's what they've alleged and put in a

14  declaration as support for their injunction.  So, that's why --

11:24:55  15  that's why we want to -- you know, we want to be able to show

16  this isn't highly unusual.  It's actually consistent with the

17  way he always did business.

18           I suppose we can work with a month to start.  And

19  then, you know, perhaps, plaintiff will be willing to consider

11:25:12  20  to allow us to get additional information before our response is

21  due.

22           MR. MAHENDRU:  Your Honor --

23           MS. FRASER:  And your Honor --

24           MR. MAHENDRU:  -- this is Ashish Mahendru.  If I could

11:25:22  25  just give you two sentences from the CIO's declaration, your

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    Honor.  This is where the rubber meets the road for their

2    injunction case.  He says in paragraph 10 "In the final days at

3    ALIL, Diaz opened a number of confidential files, such as

4    training materials, client files, internal dashboards, and

11:25:47  5    appeared to have taken screenshots of these materials.

6            "The number of screenshots Diaz took is highly

7    unusual and this activity does not appear to relate to his

8    official duties with ALIL.  We cannot definitively determine

9    what Diaz did with this information because ALIL did not

11:26:08  10   maintain web proxy logs during Diaz's employment.  But the

11   activity, coupled with the photos ALIL has seen of Diaz using

12   ALIL's training materials with Meneses Law employees, suggests

13   that Diaz took confidential information in the form of

14   screenshots with him before his employment was terminated."

11:26:32  15          So, that's the heart of this person's

16   declaration, your Honor.

17          MS. FRASER:  And, your Honor -- if I may, your Honor,

18   Kirsten Fraser for the plaintiff.  They have the screenshot

19   reports.  We turned those over.  And they are not limited to the

11:26:49  20   month before his termination.  And the screenshot reports and

21   they have the screenshot -- all the screenshots that were

22   recoverable from the laptop, they have all this information.

23          So, as it relates to making their case for the

24   preliminary injunction, you know, they -- that information has

11:27:06  25   been turned over to them.  And whether it hurts them or not,

1  again, that's for the Court to weigh; and I believe that the

2  Court, obviously, can do so with the information available.

3          THE COURT:  This is the Court.  I'm going to leave it

4  at a month.  Let's see what we get.  And I mean, we may be just

11:27:25  5  -- this may be a rabbit trail that it doesn't benefit anyone.

6  So, let's --

7          Mr. McManis, I'm giving you the month.  We'll see

8  -- if there's a dispute later on, we'll resolve it.

9          MR. MAHENDRU:  Yes, your Honor.  For Juan Pablo Diaz

11:27:46  10  Cuenca, since -- this is Ashish Mahendru again.  Since he is the

11  individual that took the screenshots -- and you know, it's

12  really, really hard to talk to someone under an AEO basis -- I

13  gave you the Kermit the Frog example.  Maybe that would stand

14  out in someone's mind.

11:28:05  15          But if he took routine screenshots and I can't

16  show him the screenshots, I'm still hamstrung.  Well, the file

17  listing, I could tell him and say, "Hey, on November 17th, the

18  last day of your employment, you took a screenshot of, you know,

19  your desktop, you know, the image of your desktop background.

11:28:23  20  Why did you do that?"  Maybe because it's the last day of his

21  employment that would stand out.

22          But given the number of photos and screenshots

23  that their report encapsulates, it becomes very, very difficult

24  to talk to him about, on any given day, why he took a picture of

11:28:41  25  his screenshot.  Since he took it, is there any particular

1  reason we can't show him the screenshot because the AEO marking

2  prevents us from doing that.

3                  In a conference that we had last Thursday, all

4  ALIL was willing to do was to let us turn on a screen share Zoom

11:29:02  5  and let, you know, Diaz Cuenca see the file listings.  You know,

6  he could just sit there for hours and look at it; but he

7  couldn't gain access to it.  We couldn't turn it over to him.

8                  And we don't live in the same cities, your Honor.

9  We're in Houston, and he's in Miami.  So, in order for us to

11:29:19  10  have any level of discussion with him, to jog his memory, or to

11  ask him specifically why did you do this on this particular day,

12  he has to have access to the actual content of what he did and

13  not just an Excel spreadsheet that says you took a screenshot

14  and you saved it as Kermit the Frog.

11:29:39  15                  So, our request could be a little bit different

16  than for Meneses.  They may not need to see the content.  But

17  they weren't the one taking the screenshots.  But Juan Pablo

18  Diaz Cuenca should have that opportunity in order to defend

19  against the very allegation that they're saying you took this,

11:29:58  20  you did this.  "It was outside the regular course of your

21  business."

22              THE COURT:  Okay.  I'm not changing my ruling.  I

23  understand that you may be hamstrung at the moment.  Now, I'm

24  not saying that -- I made it clear.  But let's see what 30 days

11:30:17  25  reveals.  Let's -- then, if you got a problem, let's come back

1  and address it.  I'm taking baby steps here because of the fact

2  we got attorney-client problems, perhaps.

3           But I will want -- Ms. Fraser, sooner or later,

4  you're going to have to show him this.  So, I mean, it's going

11:30:39  5  to come out.  You can't try the preliminary injunction hearing

6  without it.

7           MS. FRASER:  I understand, your Honor.  And it really

8  is about -- we're trying to find a creative solution so we're

9  able to prepare.  And we understand that there are things that

11:30:57  10  are -- there are things that are going -- that are the basis of

11  the claim --

12           THE COURT REPORTER:  I'm sorry, I couldn't understand

13  you.

14           MS. FRASER:  Okay.  Let me start over.  Thank you,

11:31:15  15  your Honor.

16           We certainly appreciate that and understand that

17  there are -- you know, there are -- this is a complicated case

18  in that, you know, we're dealing with attorney-client

19  confidences.  I don't think that everything that's at issue is

11:31:29  20  attorney-client.  And we're trying to find a creative way to get

21  the information to them and help them prepare for their case

22  while we are protecting the trade secret and the attorney-client

23  privilege.

24           And so, I appreciate that this case may require

11:31:51  25  some more hand-holding.  But, you know, we understand that there

1    are things that we're going to have to turn over, certainly.  We

2    understand that and appreciate that.

3              THE COURT:  Okay.  Let's see what the 30-day report

4    reveals, and we'll take it from there.

11:32:07    5              All right.  I will leave it on the defense

6    lawyers -- obviously, I want you to consult Ms. Fraser and see

7    if you can work what you think you need out.  Ultimately, if

8    there's another problem, we'll have another conference.

9              MR. MAHENDRU:  Your Honor, Ashish Mahendru here.

11:32:31   10              We do have -- you know, I don't want to burden

11   you with every discovery dispute we've populated in our letter.

12   But there are a couple, two, or three that I would like to get

13   your view on that we don't seem to have any resolution

14   forthcoming amongst ourselves.  Could I burden you with those?

11:32:52   15              THE COURT:  Yes.

16              MR. MAHENDRU:  Thank you, your Honor.

17              Chief among the requests that we made outside of

18   the image of the hard drive was our Request Number 1 which asks

19   for all of the instructional materials that Ms. Lozano, the

11:33:14   20   principal of the ALIL Law Firm, used or prepared or published

21   to, basically, sell her, in a sense, legal service, your Honor,

22   but her legal service methodology to the public.

23              I know that sounds real strange, your Honor; but

24   let me try to unpack what I just said.  It's not only that ALIL

11:33:40   25   provides legal services under immigration laws to individuals,

1   ALIL's principal, Ms. Lozano, also uses her platform to teach
2   others like the Meneses Law Firm on how to use the immigration
3   laws of the United States of America to give advice to
4   foreigners who might be impacted by this particular aspect of
5   the immigration laws.

6              And you pay a course fee to Ms. Lozano, or to the
7   ALIL Law Firm.  We don't know; we've asked.  And once you pay
8   the course fee, you get a bunch of materials and you attend the
9   course work or the workshop; and Ms. Lozano teaches -- openly
10  teaches the Meneses Law Firm and says this is what you got to do
11  when you're trying to use this aspect of the immigration laws
12  for this sector of clients.

13             While we've asked for that training material in a
14  conference, we still haven't heard back from them.  We asked for
15  ten years because we don't know how far back they go on this
16  training material and this business model.  Their pleadings talk
17  about millions of dollars Ms. Lozano, or ALIL, have generated by
18  publishing these very trade secret ideas.

19             But while we've asked, they say ten years is too
20  broad.  Well, we don't know how long she's been doing this.
21  We'll just limit it to the amount of years she's been teaching
22  or training or doing what she's doing.  And they haven't gotten
23  back to us on that.

24             And so, as we sit here today, what they have
25  published in training materials to third parties to attend and

1  pay for those courses we are totally dark on.  And I think that

2  gets to become a big issue from our perspective on the defense

3  side, certainly, when one is contending that Juan Pablo Diaz

4  Cuenca took the very essence of this legal advice with him and

11:35:55  5  turned it over to Meneses when Meneses itself paid, at some

6  point, to attend a course that Ms. Lozano was teaching.

7           That may be a little bit confusing, your Honor.

8  We can unpack that for you and explain it further.  But that's

9  the essence of this Discovery Request Number 1 dispute that we

11:36:16  10  can't seem to get passed.

11           THE COURT:  Ms. Fraser.

12           MS. FRASER:  Your Honor, we had a conference last

13  Thursday where I said we were looking for the training materials

14  and trying to figure out -- because they belong to a different

11:36:33  15  entity -- what's on our servers, what is stored elsewhere so

16  that we can turn it all over.

17           We have no problem turning it over.  After the

18  meet-and-confer where we said, "Ten years is too much," they

19  said, "Well, okay, for however long she was in business."  We

11:36:43  20  said, "Okay.  We're going to go look for that."  We have no

21  problem turning those over.  We're just trying to find them.

22           THE COURT:  Okay.  All right.

23           It's hard to claim something is a trade secret if

24  you've published it.

11:37:00  25           MS. FRASER:  I understand, Judge.  And our pleadings

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1 show that she did teach for a period of time.  That teaching

2 stopped in 2021.  And she changed the way that she's been doing

3 business.  And the things that are at issue in this case are

4 different than what was being taught.

11:37:15  5                 And we certainly appreciate, you know, that that

6 perspective -- which is why we want -- you know, we'll hand over

7 the material because they show what they show.  And I don't know

8 what they don't show.  So, there's no issue there.  We're just

9 looking for them.

11:37:32  10         THE COURT:  All right.

11         MR. MAHENDRU:  All right.  I hear Ms. Fraser, your

12 Honor; and I take her at her word.  Where we left the conference

13 was, "Hey, Lozano does this through some other vehicle.  We may

14 not have an obligation to turn this over to you in this

11:37:46  15 discovery dispute."  But by "vehicle," I presume they mean

16 entity, your Honor.  She either does it as an individual or she

17 does these training courses through another company.

18                 Ultimately, they've brought this squarely into

19 the pleadings and had pled that she does this.  So, if this is

11:38:04  20 going to turn into the, "Well, that other third party is not a

21 part of this lawsuit, we're not going to turn it over," that

22 becomes an issue for us.  But we'll take Ms. Fraser at her word

23 that they're looking for it and will turn it over.

24         THE COURT:  Okay.  To the extent it's involved in this

11:38:20  25 lawsuit, you know, if it helps both sides, I will order --

1    regardless of what entity she does it through, I'm going to

2    order production of this.  Maybe not ten years.  So, I mean,

3    let's don't hide behind the shield of that "Okay.  Let's put a

4    different name on the request for production.  Okay.  Now, it's

11:38:46    5    valid."  You know, let's work -- that's something you ought to

6    be able to work out together.

7            MS. FRASER:  And thank you, your Honor.  And we are

8    looking.  We're looking everywhere.

9            THE COURT:  Okay.  All right.  Thank you, all.

11:38:58    10            MS. FRASER:  Thank you, your Honor.

11            MR. MC MANIS:  Thank you, your Honor.

12            MR. MAHENDRU:  Thank you, your Honor.

13        (Proceedings concluded at 11:38 a.m.)

14                    C E R T I F I C A T E

15

16        I certify that the foregoing is a correct transcript

17    from the record of proceedings in the above-entitled matter, to

18    the best of my ability.

19        This record was taken through video or telephone

20    conference which may have affected the quality of the record.

21

22    By: /s/*Gayle L. Dye*                    *09-10-2024*

23            Gayle L. Dye, CSR, RDR, CRR        Date

24

25

## /

**/s/Gayle** [1] - 25:22

## 0

**09-10-2024** [1] - 25:22

## 1

**1** [3] - 4:3, 21:18, 23:9
**10** [1] - 17:2
**11:00** [1] - 1:8
**11:38** [1] - 25:13
**12** [1] - 10:6
**1221** [1] - 2:5
**1330** [1] - 1:16
**1700** [1] - 1:21
**17th** [1] - 18:17

## 2

**2021** [1] - 24:2
**2023** [1] - 10:18
**2024** [2] - 1:8, 3:2
**2500** [1] - 2:5

## 3

**3** [2] - 1:8, 3:2
**30** [1] - 19:24
**30-day** [1] - 21:3

## 4

**4** [1] - 12:11
**43214** [1] - 1:17

## 5

**515** [1] - 2:17

## 6

**614.481.0900** [1] - 1:17
**614.481.0904** [1] - 1:18
**639** [1] - 2:11

## 7

**713.250.5582** [1] - 2:18
**713.568.7871** [1] - 1:22
**713.571.1519** [1] - 2:12
**713.650.0405** [1] - 1:22
**713.651.0776** [1] - 1:23
**713.655.0062** [1] - 2:7
**713.655.1101** [1] - 2:6
**717** [1] - 1:20
**77002** [2] - 1:21, 2:18
**77007** [1] - 2:12

**77010** [1] - 2:6

## 8

**8004** [1] - 2:17

## A

**a.m** [2] - 1:8, 25:13
**ability** [2] - 7:17, 25:18
**able** [7] - 4:23, 6:5, 7:13, 14:22, 16:15, 20:9, 25:6
**above-entitled** [1] - 25:17
**access** [10] - 4:25, 5:2, 5:8, 11:13, 13:12, 13:19, 14:20, 15:25, 19:7, 19:12
**accessed** [6] - 5:21, 13:13, 13:16, 13:18, 13:25
**accurate** [1] - 7:8
**acting** [1] - 14:17
**Action** [1] - 1:6
**activities** [3] - 8:15, 9:23, 10:9
**activity** [8] - 5:3, 6:21, 8:23, 15:9, 15:10, 16:11, 17:7, 17:11
**actual** [2] - 15:14, 19:12
**additional** [1] - 16:20
**address** [2] - 12:6, 20:1
**adequately** [1] - 5:4
**adjourn** [1] - 15:25
**advice** [5] - 11:17, 11:23, 11:25, 22:3, 23:4
**AEO** [5] - 9:12, 10:3, 10:22, 18:12, 19:1
**affected** [1] - 25:20
**agreed** [1] - 10:17
**ahead** [3] - 3:20, 7:18, 8:3
**AHMAD** [1] - 2:4
**aid** [1] - 11:3
**AIDED** [1] - 1:25
**al** [1] - 1:7
**Alexandra** [1] - 3:6
**ALEXANDRA** [1] - 1:4
**ALIL** [16] - 8:13, 8:14, 8:16, 8:17, 8:18, 8:19, 11:20, 17:3, 17:8, 17:9, 17:11, 19:4, 21:20, 21:24, 22:7, 22:17
**ALIL's** [2] - 17:12, 22:1
**allegation** [1] - 19:19
**allegations** [6] - 14:23, 14:24, 14:25, 15:1, 15:2, 15:7
**alleged** [1] - 16:13
**allow** [5] - 14:12, 15:24, 16:1, 16:20
**allowing** [1] - 13:21
**amahendru@thelitigationgroup.com** [1] - 2:13
**amended** [1] - 4:1
**America** [1] - 22:3
**amount** [2] - 8:23, 22:21
**analysis** [6] - 4:13, 4:19, 4:25, 6:6, 6:25, 7:10
**analyze** [2] - 4:17, 7:24
**ANDREW** [1] - 1:11

**answer** [1] - 14:3
**anticipate** [1] - 4:1
**appear** [2] - 16:12, 17:7
**APPEARANCES** [2] - 1:13, 2:1
**appeared** [2] - 6:20, 17:5
**appreciate** [7] - 8:7, 11:14, 11:18, 20:16, 20:24, 21:2, 24:5
**arm** [1] - 12:16
**arm-wrestling** [1] - 12:16
**articulate** [1] - 11:5
**Ashish** [4] - 2:10, 3:16, 16:24, 18:10
**ashish** [2] - 8:4, 21:9
**aspect** [2] - 22:4, 22:11
**attached** [1] - 6:19
**attend** [3] - 22:8, 22:25, 23:6
**attorney** [9] - 11:16, 12:12, 13:1, 14:3, 14:6, 20:2, 20:18, 20:20, 20:22
**attorney's** [2] - 9:10, 12:9
**attorney-client** [9] - 11:16, 12:12, 13:1, 14:3, 14:6, 20:2, 20:18, 20:20, 20:22
**attorneys** [2] - 13:23, 14:9
**available** [4] - 4:16, 11:3, 13:5, 18:2
**Avenue** [1] - 1:20
**AZA** [1] - 3:11

## B

**baby** [1] - 20:1
**background** [1] - 18:19
**based** [1] - 8:6
**basis** [5] - 7:19, 12:7, 15:17, 18:12, 20:10
**become** [2] - 9:19, 23:2
**becomes** [3] - 9:7, 18:23, 24:22
**BEFORE** [1] - 1:11
**behalf** [6] - 3:5, 3:7, 3:11, 3:17, 8:1, 14:15
**behind** [1] - 25:3
**belong** [1] - 23:14
**benefit** [1] - 18:5
**best** [1] - 25:18
**big** [1] - 23:2
**bit** [3] - 9:3, 19:15, 23:7
**Boulevard** [1] - 2:11
**Braun** [2] - 2:10, 3:17
**breached** [1] - 7:15
**bridge** [1] - 9:3
**brief** [1] - 12:14
**broad** [1] - 22:20
**broken** [1] - 9:3
**brought** [1] - 24:18
**bunch** [3] - 9:25, 10:1, 22:8
**burden** [2] - 21:10, 21:14
**business** [6] - 14:17, 16:17, 19:21, 22:16, 23:19, 24:3
**BY** [1] - 1:24

## C

**cannot** [3] - 9:11, 9:12, 17:8
**case** [14] - 9:17, 9:18, 11:11, 11:21, 11:22, 12:20, 12:25, 15:13, 17:2, 17:23, 20:17, 20:21, 20:24, 24:3
**cases** [1] - 16:4
**center** [1] - 6:22
**central** [1] - 4:19
**certainly** [5] - 16:8, 20:16, 21:1, 23:3, 24:5
**certify** [1] - 25:16
**cetera** [2] - 4:22, 5:22
**changed** [1] - 24:2
**changing** [1] - 19:22
**chastised** [1] - 11:19
**chief** [4] - 6:17, 9:2, 9:6, 21:17
**CIO** [2] - 7:2, 7:3
**CIO's** [1] - 16:25
**cities** [1] - 19:8
**Civil** [1] - 1:6
**claim** [6] - 6:7, 6:22, 12:7, 12:11, 20:11, 23:23
**claiming** [2] - 4:21, 10:25
**clear** [1] - 19:24
**clearly** [1] - 8:13
**client** [17] - 6:20, 7:14, 9:25, 10:7, 11:15, 11:16, 11:23, 11:25, 12:12, 13:1, 14:3, 14:6, 17:4, 20:2, 20:18, 20:20, 20:22
**client's** [1] - 3:23
**clients** [4] - 11:18, 13:22, 13:23, 22:12
**collaboration** [1] - 8:21
**Columbus** [1] - 1:17
**coming** [1] - 14:7
**company** [2] - 5:20, 24:17
**compete** [2] - 9:18, 12:2
**complete** [1] - 4:12
**completely** [1] - 10:10
**complicated** [2] - 12:25, 20:17
**COMPUTER** [1] - 1:25
**computer** [2] - 4:6, 5:15
**COMPUTER-AIDED** [1] - 1:25
**computer-wise** [1] - 5:15
**concerns** [1] - 7:22
**concluded** [1] - 25:13
**conduct** [2] - 7:17, 14:16
**conducted** [2] - 8:14, 14:17
**confer** [1] - 23:18
**CONFERENCE** [1] - 1:12
**conference** [6] - 19:3, 21:8, 22:14, 23:12, 24:12, 25:20
**confidences** [2] - 7:14, 20:19
**confidential** [5] - 10:14, 11:24, 12:3, 17:3, 17:13
**conflict** [1] - 8:6
**confusing** [1] - 23:7
**connected** [1] - 11:7
**consider** [1] - 16:19

**consistent** [3] - 7:8, 14:17, 16:16
**consult** [1] - 21:6
**contain** [3] - 11:14, 11:15, 11:16
**contending** [1] - 23:3
**content** [3] - 11:9, 19:12, 19:16
**contents** [5] - 9:13, 13:6, 13:12, 13:15, 14:21
**context** [1] - 5:19
**continued** [1] - 2:2, 3:24
**copies** [1] - 5:23
**correct** [1] - 25:16
**counsel** [6] - 3:20, 6:13, 8:2, 9:21, 10:1, 10:2
**counsel's** [1] - 7:21
**couple** [1] - 21:12
**coupled** [1] - 17:11
**course** [5] - 19:20, 22:6, 22:8, 22:9, 23:6
**courses** [2] - 23:1, 24:17
**Court** [6] - 6:23, 7:23, 7:24, 12:5, 18:2, 18:3
**court** [3] - 12:15, 15:20, 18:1
**COURT** [28] - 1:1, 2:16, 3:3, 3:8, 3:12, 3:19, 5:10, 5:13, 5:15, 6:9, 7:25, 8:3, 12:18, 13:9, 13:11, 14:24, 15:4, 15:19, 18:3, 19:22, 20:12, 21:3, 21:15, 23:11, 23:22, 24:10, 24:24, 25:9
**created** [1] - 4:5
**creating** [1] - 11:10
**creative** [2] - 20:8, 20:20
**CRR** [2] - 2:17, 25:23
**crux** [1] - 6:7
**CSR** [2] - 2:17, 25:23
**Cuenca** [14] - 3:17, 8:1, 8:13, 8:23, 10:3, 10:12, 10:16, 11:1, 11:16, 11:23, 18:10, 19:5, 19:18, 23:4
**CUENCA** [1] - 2:9
**Cuenca's** [3] - 9:11, 9:23, 10:5

## D

**dark** [1] - 23:1
**Darren** [1] - 2:10
**dashboards** [1] - 17:4
**data** [5] - 4:12, 6:15, 6:17, 6:25, 15:8
**Date** [1] - 25:23
**date** [1] - 10:17
**dates** [1] - 5:2
**day-to-day** [3] - 8:15, 10:5, 10:9
**days** [3] - 15:14, 17:2, 19:24
**dealing** [2] - 16:5, 20:18
**decided** [1] - 9:22
**declarant** [1] - 9:7
**declaration** [4] - 4:10, 5:5, 6:18, 7:4, 16:9, 16:14, 16:25, 17:16
**defend** [1] - 19:18
**defendant** [3] - 3:17, 4:6, 10:25, 11:1, 12:21, 12:22, 13:8, 13:18
**DEFENDANT** [2] - 2:3, 2:9

**defendant's** [1] - 13:14
**Defendants** [1] - 1:9
**defendants** [9] - 3:9, 3:13, 7:6, 8:10, 12:8, 13:11, 13:22, 15:24
**defendants'** [1] - 13:6
**defense** [5] - 9:20, 13:23, 14:9, 21:5, 23:2
**definitively** [1] - 17:8
**deposition** [1] - 7:3
**description** [1] - 12:14
**desktop** [2] - 18:19
**determine** [3] - 7:7, 7:14, 17:8
**determined** [1] - 15:14
**device** [2] - 5:24, 6:6
**devices** [1] - 11:7
**Diaz** [23] - 3:17, 4:6, 4:22, 6:7, 7:11, 8:2, 8:23, 9:11, 10:3, 10:5, 11:1, 11:15, 14:16, 16:11, 17:3, 17:6, 17:9, 17:11, 17:13, 18:9, 19:5, 19:18, 23:3
**DIAZ** [1] - 2:9
**Diaz's** [2] - 6:16, 7:10
**different** [4] - 19:15, 23:14, 24:4, 25:4
**difficult** [1] - 18:23
**disclose** [1] - 10:21
**discloses** [1] - 13:4
**disconnected** [1] - 11:8
**discovery** [7] - 4:4, 7:19, 12:5, 15:17, 21:11, 23:9, 24:15
**discuss** [2] - 9:12, 10:2
**discussion** [2] - 9:20, 19:10
**dispute** [11] - 3:25, 5:7, 6:1, 8:13, 11:24, 12:5, 16:3, 18:8, 21:11, 23:9, 24:15
**DISTRICT** [2] - 1:1, 1:2
**DIVISION** [1] - 1:3
**dollars** [1] - 22:17
**done** [4] - 4:14, 5:6, 7:7, 8:19
**downloaded** [10] - 5:11, 5:22, 6:20, 9:25, 10:7, 13:5, 13:7, 13:12
**downloads** [1] - 5:16
**drastic** [1] - 7:9
**drive** [9] - 5:1, 8:12, 9:4, 9:16, 10:24, 11:2, 13:4, 21:18
**drives** [1] - 4:22
**Dublin** [1] - 1:16
**due** [1] - 16:21
**during** [1] - 17:10
**duties** [2] - 16:12, 17:8
**DYE** [1] - 2:17
**Dye** [2] - 25:22, 25:23

## E

**either** [3] - 8:17, 14:12, 24:16
**elsewhere** [1] - 23:15
**employees** [1] - 17:12
**employment** [6] - 6:16, 13:25, 17:10, 17:14, 18:18, 18:21
**encapsulates** [2] - 12:4, 18:23
**engaged** [1] - 8:23

**engagement** [1] - 8:16
**entire** [4] - 5:16, 6:25, 7:9, 7:17
**entirety** [1] - 15:10
**entitled** [1] - 25:17
**entity** [3] - 23:15, 24:16, 25:1
**especially** [1] - 15:16
**essence** [3] - 11:24, 23:4, 23:9
**et** [3] - 1:7, 4:22, 5:22
**everywhere** [1] - 25:8
**evidence** [4] - 4:21, 6:25, 7:23, 13:24
**example** [3] - 6:3, 10:11, 18:13
**excel** [1] - 19:13
**exculpatory** [1] - 6:24
**expedited** [3] - 4:1, 7:19, 15:17
**expert** [15] - 4:8, 4:17, 4:24, 7:6, 8:17, 8:19, 8:22, 9:1, 9:4, 9:6, 11:4, 11:5, 11:10, 13:6
**experts** [1] - 5:6
**explain** [1] - 23:8
**explains** [1] - 7:4
**extent** [3] - 13:4, 15:12, 24:24
**extract** [1] - 6:15
**extracted** [2] - 6:17, 7:13
**eyes** [2] - 9:10, 12:9

**F**

**fact** [4] - 5:5, 11:14, 13:18, 20:1
**far** [4] - 14:24, 15:3, 15:7, 22:15
**FAX** [4] - 1:18, 1:22, 2:7, 2:13
**fee** [2] - 22:6, 22:8
**fight** [3] - 12:20, 12:24, 13:20
**fighting** [1] - 6:2
**figure** [3] - 13:20, 14:11, 23:14
**file** [12] - 5:2, 5:21, 9:13, 9:18, 9:19, 11:6, 13:16, 13:17, 13:25, 14:5, 18:16, 19:5
**filed** [1] - 16:10
**files** [13] - 5:21, 5:24, 6:20, 9:18, 9:25, 10:7, 11:15, 13:7, 13:12, 13:15, 17:3, 17:4
**filter** [1] - 8:11
**final** [1] - 17:2
**fingerprints** [1] - 9:24
**firm** [6] - 7:12, 13:14, 21:20, 22:2, 22:7, 22:10
**FIRM** [1] - 1:7
**firms** [1] - 16:5
**first** [5] - 3:23, 6:8, 10:25, 12:19, 12:21
**five** [1] - 9:6
**FOR** [3] - 1:14, 2:3, 2:9
**foregoing** [1] - 25:16
**foreigners** [1] - 22:4
**forensic** [13] - 4:5, 4:7, 4:12, 4:15, 4:16, 4:19, 4:24, 5:8, 5:10, 5:19, 5:20, 11:3, 13:6
**form** [4] - 7:4, 7:14, 14:4, 17:13
**formulate** [1] - 10:4
**forth** [2] - 7:22, 9:20

**forthcoming** [1] - 21:14
**four** [1] - 9:6
**fraser** [1] - 15:5
**Fraser** [11] - 1:15, 3:5, 6:11, 14:10, 15:4, 17:18, 20:3, 21:6, 23:11, 24:11, 24:22
**FRASER** [12] - 3:5, 6:11, 15:2, 15:6, 16:23, 17:17, 20:7, 20:14, 23:12, 23:25, 25:7, 25:10
**Friday** [1] - 8:7
**frog** [4] - 10:18, 10:20, 18:13, 19:14
**FROM** [1] - 1:25
**full** [2] - 11:2, 11:3

**G**

**gain** [1] - 19:7
**gander** [1] - 11:12
**gap** [1] - 14:18
**Gayle** [1] - 25:23
**GAYLE** [1] - 2:17
**generated** [4] - 9:1, 9:2, 9:19, 22:17
**generates** [1] - 9:5
**given** [2] - 18:22, 18:24
**goal** [1] - 15:21
**goose** [1] - 11:12

**H**

**H-24-cv-2190** [1] - 1:6
**habit** [1] - 10:12
**hamstrung** [2] - 18:16, 19:23
**hand** [2] - 20:25, 24:6
**hand-holding** [1] - 20:25
**HANEN** [1] - 1:11
**happy** [1] - 7:3
**hard** [9] - 8:12, 9:4, 9:16, 10:23, 11:2, 13:3, 18:12, 21:18, 23:23
**hear** [3] - 13:9, 15:23, 24:11
**heard** [3] - 10:1, 10:2, 22:14
**hearing** [3] - 5:14, 15:22, 20:5
**heart** [1] - 17:15
**Heights** [1] - 2:11
**help** [2] - 8:11, 20:21
**helps** [1] - 24:25
**hide** [1] - 25:3
**highly** [3] - 16:11, 16:16, 17:6
**holding** [1] - 20:25
**Honor** [44] - 3:5, 3:10, 3:16, 3:21, 4:5, 6:11, 8:1, 8:5, 8:8, 9:4, 9:8, 9:14, 10:5, 10:15, 10:19, 10:24, 11:21, 12:4, 12:13, 14:14, 15:2, 16:7, 16:22, 16:23, 17:1, 17:16, 17:17, 18:9, 19:8, 20:7, 20:15, 21:9, 21:16, 21:21, 21:23, 23:7, 23:12, 24:12, 24:16, 25:7, 25:10, 25:11, 25:12
**honor** [1] - 15:12
**HONORABLE** [1] - 1:11
**hours** [1] - 19:6
**HOUSTON** [1] - 1:3
**Houston** [6] - 1:7, 1:21, 2:6, 2:12, 2:18,

19:9
**hurts** [1] - 17:25

**I**

**ideas** [1] - 22:18
**identifies** [1] - 5:21
**image** [19] - 4:6, 4:11, 4:12, 4:16, 5:8, 5:11, 5:19, 7:9, 7:17, 8:11, 9:16, 10:23, 11:2, 11:3, 11:13, 12:10, 12:16, 18:19, 21:18
**images** [1] - 9:4
**immigration** [4] - 21:25, 22:2, 22:5, 22:11
**Immigration** [1] - 3:6
**IMMIGRATION** [1] - 1:4
**impacted** [1] - 22:4
**implicate** [1] - 14:21
**important** [3] - 4:18, 9:17, 14:22
**inculpatory** [1] - 6:24
**individual** [3] - 8:9, 18:11, 24:16
**individuals** [1] - 21:25
**information** [24] - 4:13, 5:1, 6:4, 6:18, 7:3, 7:13, 9:2, 9:7, 9:17, 10:9, 10:14, 11:17, 11:25, 12:3, 12:6, 13:21, 15:15, 16:20, 17:9, 17:13, 17:22, 17:24, 18:2, 20:21
**initial** [3] - 12:19, 13:3, 15:21
**injunction** [10] - 4:2, 4:20, 6:19, 7:20, 15:18, 15:22, 16:14, 17:2, 17:24, 20:5
**instructional** [1] - 21:19
**interject** [1] - 8:2
**internal** [2] - 7:2, 17:4
**involved** [1] - 24:24
**issue** [10] - 4:3, 4:4, 4:21, 7:11, 14:15, 20:19, 23:2, 24:3, 24:8, 24:22
**issues** [3] - 3:22, 8:11, 14:22
**itself** [2] - 8:18, 23:5

**J**

**JACKSON** [1] - 1:20
**Jason** [5] - 2:4, 3:11, 3:21, 14:14, 16:7
**jmcmanis@azalaw.com** [1] - 2:7
**job** [1] - 9:24
**jog** [1] - 19:10
**JUAN** [1] - 2:9
**Juan** [3] - 3:17, 11:1, 18:9, 19:17, 23:3
**Judge** [3] - 5:13, 13:9, 23:25
**judgment** [1] - 7:24
**jury** [1] - 15:23

**K**

**keep** [1] - 16:2
**Kermit** [4] - 10:18, 10:20, 18:13, 19:14
**key** [3] - 4:4, 5:7, 7:11
**kfraser@organlegal.com** [1] - 1:18
**kicked** [1] - 3:13
**kill** [1] - 12:23

**kind** [7] - 3:13, 3:22, 4:19, 4:21, 5:7, 5:25, 8:9
**kinds** [1] - 16:4
**Kirsten** [4] - 1:15, 3:5, 6:11, 17:18

## L

**laced** [2] - 10:13, 10:14
**laptop** [12] - 6:14, 6:16, 7:9, 7:17, 8:17, 8:20, 8:21, 9:18, 11:13, 11:14, 17:22
**large** [1] - 12:5
**last** [7] - 6:16, 8:7, 10:6, 18:18, 18:20, 19:3, 23:12
**Law** [1] - 3:6
**LAW** [2] - 1:4, 1:7
**law** [11] - 3:11, 10:25, 12:1, 13:14, 14:15, 16:5, 17:12, 21:20, 22:2, 22:7, 22:10
**laws** [4] - 21:25, 22:3, 22:5, 22:11
**lawsuit** [2] - 24:21, 24:25
**lawyers** [2] - 9:11, 21:6
**leading** [1] - 8:24
**least** [1] - 3:22
**leave** [4] - 9:9, 15:20, 18:3, 21:5
**leaves** [2] - 9:9, 14:18
**leaving** [1] - 13:14
**left** [2] - 13:24, 24:12
**legal** [7] - 11:17, 11:22, 11:25, 21:21, 21:22, 21:25, 23:4
**LEGAL** [1] - 1:16
**letter** [4] - 3:13, 6:23, 11:19, 21:11
**letting** [1] - 11:8
**level** [2] - 14:20, 19:10
**LEWIS** [1] - 1:20
**limit** [1] - 22:21
**limited** [1] - 17:19
**LINBERG** [1] - 3:7
**Linberg** [2] - 1:19, 3:7
**listing** [3] - 9:18, 11:6, 18:17
**listings** [3] - 9:13, 9:19, 19:5
**live** [1] - 19:8
**LLP** [1] - 1:16
**logs** [1] - 17:10
**look** [7] - 7:7, 7:13, 8:20, 9:23, 10:11, 19:6, 23:20
**look-back** [3] - 8:20, 9:23, 10:11
**looked** [1] - 7:2
**looking** [6] - 14:4, 23:13, 24:9, 24:23, 25:8
**looks** [1] - 15:24
**LOZANO** [1] - 1:14
**Lozano** [8] - 3:6, 21:19, 22:1, 22:6, 22:9, 22:17, 23:6, 24:13

## M

**Mahendru** [7] - 2:10, 3:16, 8:4, 14:15, 16:24, 18:10, 21:9
**MAHENDRU** [11] - 2:11, 3:16, 8:1, 8:4, 16:22, 16:24, 18:9, 21:9, 21:16, 24:11,

25:12
**maintain** [1] - 17:10
**MANIS** [7] - 3:10, 3:21, 5:18, 14:14, 15:1, 16:7, 25:11
**manner** [2] - 8:15, 11:9
**mark** [1] - 12:9
**marked** [3] - 9:10, 9:12, 12:9
**marking** [1] - 19:1
**material** [3] - 22:13, 22:16, 24:7
**materials** [7] - 17:4, 17:5, 17:12, 21:19, 22:8, 22:25, 23:13
**matter** [3] - 7:13, 11:23, 25:17
**MC** [7] - 3:10, 3:21, 5:18, 14:14, 15:1, 16:7, 25:11
**McKinney** [1] - 2:5
**McManis** [7] - 2:4, 3:11, 3:21, 5:10, 14:14, 16:7, 18:7
**mean** [10] - 5:12, 5:23, 12:20, 14:5, 15:21, 15:23, 18:4, 20:4, 24:15, 25:2
**meaningfully** [1] - 5:9
**MEANS** [1] - 1:24
**means** [2] - 8:15, 11:9
**meet** [1] - 23:18
**meet-and-confer** [1] - 23:18
**meets** [1] - 17:1
**memory** [1] - 19:10
**Meneses** [10] - 3:11, 10:25, 12:1, 14:15, 17:12, 19:16, 22:2, 22:10, 23:5
**MENESES** [2] - 1:7, 2:3
**MENSING** [1] - 2:4
**method** [1] - 11:9
**methodology** [1] - 21:22
**methods** [1] - 8:15
**Miami** [1] - 19:9
**middle** [1] - 15:24
**might** [3] - 9:24, 13:17, 22:4
**millions** [1] - 22:17
**mind** [1] - 18:14
**minute** [1] - 10:21
**missing** [1] - 7:8
**model** [1] - 22:16
**moment** [2] - 8:10, 19:23
**month** [19] - 4:11, 6:16, 8:24, 9:23, 10:10, 13:13, 14:18, 15:8, 15:9, 15:20, 16:2, 16:3, 16:4, 16:5, 16:8, 16:18, 17:20, 18:4, 18:7
**months** [3] - 10:6, 14:19, 15:16
**morning** [1] - 3:10
**motion** [4] - 4:20, 6:19, 7:20, 15:18
**MR** [17] - 3:10, 3:16, 3:21, 5:18, 8:1, 8:4, 14:14, 15:1, 16:7, 16:22, 16:24, 18:9, 21:9, 21:16, 24:11, 25:11, 25:12
**MS** [13] - 3:5, 3:7, 6:11, 15:2, 15:6, 16:23, 17:17, 20:7, 20:14, 23:12, 23:25, 25:7, 25:10
**myopic** [1] - 10:15

## N

**name** [2] - 5:2, 25:4

**necessarily** [1] - 16:5
**necessary** [1] - 15:16
**need** [9] - 3:14, 4:23, 5:1, 5:8, 6:5, 7:12, 15:12, 19:16, 21:7
**never** [1] - 12:8
**non** [2] - 9:18, 12:2
**non-compete** [2] - 9:18, 12:2
**none** [1] - 10:2
**normally** [2] - 9:15
**November** [2] - 10:18, 18:17
**number** [8] - 4:3, 12:11, 16:10, 17:3, 17:6, 18:22, 21:18, 23:9

## O

**obligation** [1] - 24:14
**obviously** [3] - 15:20, 18:2, 21:6
**OF** [2] - 1:2, 1:10
**officer** [3] - 6:18, 9:3, 9:7
**official** [2] - 16:12, 17:8
**Ohio** [1] - 1:17
**once** [2] - 11:3, 22:7
**one** [10] - 3:23, 9:23, 9:24, 10:10, 12:15, 14:15, 14:18, 15:8, 19:17, 23:3
**one-month** [2] - 9:23, 10:10
**opened** [1] - 17:3
**openly** [1] - 22:9
**opportunity** [1] - 19:18
**opposed** [1] - 11:8
**order** [10] - 4:1, 4:23, 5:24, 10:17, 13:3, 19:9, 19:18, 24:25, 25:2
**ordering** [1] - 13:11
**ORGAN** [1] - 1:16
**ought** [1] - 25:5
**ourselves** [2] - 8:10, 21:14
**outside** [2] - 19:20, 21:17
**overarching** [1] - 3:22
**overlay** [1] - 8:9
**overlays** [1] - 13:2
**own** [4] - 4:16, 4:24, 6:6, 7:6

## P

**PABLO** [1] - 2:9
**Pablo** [5] - 3:17, 11:1, 18:9, 19:17, 23:3
**package** [1] - 5:17
**paid** [1] - 23:5
**Pam** [1] - 3:7
**Pamela** [1] - 1:19
**Pamela.Linberg@jacksonlewis.com** [1] - 1:23
**paragraph** [1] - 17:2
**paralegal** [2] - 7:12, 8:10
**part** [3] - 8:16, 9:19, 24:21
**particular** [3] - 18:25, 19:11, 22:4
**particularly** [1] - 6:2
**parties** [1] - 22:25
**party** [4] - 4:7, 4:24, 5:19, 24:20
**passed** [1] - 23:10

patent [1] - 12:14
pay [3] - 22:6, 22:7, 23:1
PC [2] - 1:20, 2:11
perform [1] - 10:9
perhaps [2] - 16:19, 20:2
period [3] - 8:20, 10:11, 24:1
permission [1] - 6:1
person's [1] - 17:15
personal [1] - 8:5
perspective [4] - 3:23, 4:5, 23:2, 24:6
persuasive [1] - 7:22
phone [1] - 3:4
photos [2] - 17:11, 18:22
pick [1] - 7:7
picture [3] - 10:4, 10:20, 18:24
piece [2] - 6:24, 9:17
place [1] - 6:8
Plaintiff [1] - 1:5
plaintiff [12] - 3:6, 3:7, 4:5, 4:7, 4:9,
    4:10, 6:12, 11:8, 12:20, 12:23, 16:19,
    17:18
PLAINTIFF [1] - 1:14
plaintiff's [2] - 13:14, 13:24
plaintiffs [4] - 3:4, 3:15, 6:10, 9:20
platform [1] - 22:1
play [1] - 14:7
pleadings [3] - 22:16, 23:25, 24:19
pled [1] - 24:19
plenty [1] - 15:8
PLLC [3] - 1:4, 1:7, 2:4
point [4] - 6:25, 8:5, 13:19, 23:6
populated [1] - 21:11
ported [1] - 11:25
portion [1] - 4:19
possibility [1] - 11:20
possible [1] - 5:15
potential [2] - 11:18, 11:20
practice [1] - 10:12
preceding [1] - 13:14
preliminary [8] - 4:2, 4:20, 6:19, 7:20,
    15:17, 15:22, 17:24, 20:5
prepare [2] - 20:9, 20:21
prepared [1] - 21:20
present [1] - 10:15
presume [2] - 5:24, 24:15
pretty [1] - 16:6
prevents [1] - 19:2
previously [1] - 14:19
principal [2] - 21:20, 22:1
privilege [9] - 7:18, 8:5, 11:17, 12:11,
    12:12, 13:2, 14:3, 14:7, 20:23
privileged [3] - 12:6, 13:17, 13:18
problem [8] - 7:16, 12:5, 12:14, 16:9,
    19:25, 21:8, 23:17, 23:21
problematic [1] - 7:18
problems [1] - 20:2
proceeding [1] - 4:2
PROCEEDINGS [3] - 1:10, 1:24, 3:1
Proceedings [1] - 25:13

proceedings [1] - 25:17
process [1] - 4:14
processes [1] - 7:5
PRODUCED [1] - 1:25
produced [5] - 6:3, 6:4, 6:14, 9:21
produces [1] - 13:4
production [2] - 25:2, 25:4
protecting [1] - 20:22
protective [1] - 10:17
provided [7] - 4:7, 5:5, 5:19, 6:14, 7:1,
    9:1, 12:16
provides [2] - 4:21, 21:25
proxy [1] - 17:10
public [1] - 21:22
published [3] - 21:20, 22:25, 23:24
publishing [1] - 22:18
pull [1] - 15:11
put [4] - 6:18, 7:2, 16:13, 25:3

                    Q

quality [1] - 25:20
questions [2] - 12:14, 14:13
quiet [1] - 11:21
quotes [1] - 9:15

                    R

rabbit [1] - 18:5
raised [1] - 14:15
ran [1] - 4:8
RDR [2] - 2:17, 25:23
ready [1] - 15:22
real [2] - 11:15, 21:23
realize [1] - 15:21
really [8] - 6:2, 6:5, 8:6, 10:24, 15:15,
    18:12, 20:7
reason [1] - 19:1
recognize [1] - 13:1
recognizing [1] - 11:20
record [4] - 3:3, 25:17, 25:19, 25:20
RECORDED [1] - 1:24
recoverable [1] - 17:22
regarding [1] - 6:21
regardless [1] - 25:1
regular [1] - 19:20
regulate [1] - 11:8
reined [1] - 10:10
relate [2] - 16:12, 17:7
related [1] - 9:23
relates [1] - 17:23
relation [1] - 7:19
relying [1] - 4:11
render [1] - 11:25
rendering [2] - 11:17, 11:22
report [6] - 3:24, 4:12, 8:22, 11:6, 18:23,
    21:3
REPORTER [5] - 2:16, 5:13, 13:9, 15:4,
    20:12

reports [9] - 4:8, 4:11, 6:6, 9:1, 9:2, 9:5,
    17:19, 17:20
request [7] - 5:25, 12:10, 12:11, 19:15,
    21:18, 23:9, 25:4
requested [1] - 11:1
requests [1] - 21:17
require [1] - 20:24
required [1] - 13:8
requires [1] - 12:15
rescheduling [1] - 8:6
resolution [1] - 21:13
resolve [1] - 18:8
resolved [2] - 3:25, 4:3
respond [7] - 3:15, 4:24, 5:4, 5:9, 6:10,
    6:12, 14:23
responds [1] - 12:23
response [2] - 15:17, 16:20
responsibilities [1] - 10:6
results [2] - 4:15, 4:19
returned [1] - 4:8
reveals [2] - 19:25, 21:4
review [1] - 7:18
reviewing [1] - 15:16
Road [1] - 1:16
road [1] - 17:1
Room [1] - 2:17
routine [2] - 10:12, 18:15
routinely [4] - 10:7, 10:8, 10:13
rubber [1] - 17:1
ruling [1] - 19:22
run [3] - 4:25, 5:20, 11:6
Rusk [1] - 2:17

                    S

saved [1] - 19:14
schedule [2] - 3:23, 3:24
scheduling [1] - 4:1
screen [1] - 19:4
screenshot [10] - 10:18, 10:21, 15:10,
    17:18, 17:20, 17:21, 18:18, 18:25,
    19:1, 19:13
screenshots [15] - 5:3, 6:3, 6:21, 10:1,
    10:8, 16:11, 17:5, 17:6, 17:14, 17:21,
    18:11, 18:15, 18:16, 18:22, 19:17
searches [1] - 5:2
seconds [1] - 11:22
secret [8] - 4:20, 9:17, 10:13, 12:11,
    12:20, 20:22, 22:18, 23:23
secrets [6] - 6:22, 12:2, 12:21, 12:22,
    14:5
sector [1] - 22:12
see [16] - 4:25, 5:2, 6:15, 8:10, 12:8,
    14:10, 15:9, 16:3, 18:4, 18:7, 19:5,
    19:16, 19:24, 21:3, 21:6
seem [2] - 21:13, 23:10
sell [1] - 21:21
sense [1] - 21:21
sentences [1] - 16:25

**separate** [1] - 6:1
**separately** [1] - 11:1
**September** [1] - 3:2
**september** [1] - 1:8
**series** [2] - 9:5, 12:13
**servers** [1] - 23:15
**service** [2] - 21:21, 21:22
**services** [1] - 21:25
**share** [2] - 9:11, 19:4
**shield** [2] - 12:7, 25:3
**show** [8] - 16:15, 18:16, 19:1, 20:4, 24:1, 24:7, 24:8
**shows** [4] - 8:23, 11:7, 13:24, 16:3
**side** [5] - 5:25, 7:10, 11:4, 23:3
**sides** [2] - 3:24, 24:25
**signing** [1] - 10:17
**simply** [1] - 11:8
**single** [1] - 4:11
**sit** [2] - 19:6, 22:24
**six** [3] - 6:20, 14:19, 15:16
**skipped** [1] - 9:22
**slightly** [2] - 8:2, 8:8
**Smith's** [3] - 13:16, 13:17, 13:25
**snapshot** [3] - 8:25, 11:5, 16:6
**snapshots** [1] - 10:8
**software** [1] - 5:20
**solution** [1] - 20:8
**someone** [2] - 9:16, 18:12
**sooner** [1] - 20:3
**sorry** [4] - 5:13, 13:9, 15:6, 20:12
**sort** [4] - 4:3, 5:4, 6:7, 14:16
**sounds** [1] - 21:23
**SOUTHERN** [1] - 1:2
**specifically** [1] - 19:11
**spreadsheet** [2] - 9:5, 19:13
**spreadsheets** [2] - 9:11, 9:13
**squarely** [1] - 24:18
**stand** [2] - 18:13, 18:21
**start** [3] - 3:12, 16:18, 20:14
**starting** [1] - 13:19
**STATES** [1] - 1:1
**States** [1] - 22:3
**steal** [2] - 11:24, 12:22
**stealing** [2] - 10:14, 14:5
**STENOGRAPHIC** [1] - 1:24
**step** [7] - 7:5, 7:9, 9:22, 10:25, 12:19, 13:3
**steps** [1] - 20:1
**still** [3] - 14:18, 18:16, 22:14
**stole** [3] - 12:2, 12:21
**stopped** [1] - 24:2
**stored** [1] - 23:15
**strange** [1] - 21:23
**Street** [1] - 2:5
**submitted** [1] - 4:10
**submitting** [1] - 4:1
**substance** [2] - 10:24, 11:10
**sues** [1] - 12:21
**suggest** [1] - 16:10

**suggests** [1] - 17:12
**Suite** [2] - 1:21, 2:5
**support** [1] - 16:14
**suppose** [1] - 16:18
**suspicious** [1] - 6:21
**sword** [1] - 12:7

**T**

**taught** [1] - 24:4
**teach** [2] - 22:1, 24:1
**teaches** [2] - 22:9, 22:10
**teaching** [3] - 22:21, 23:6, 24:1
**TELEPHONE** [1] - 1:12
**telephone** [1] - 25:19
**ten** [4] - 22:15, 22:19, 23:18, 25:2
**terminated** [1] - 17:14
**termination** [3] - 8:24, 15:15, 17:20
**test** [1] - 4:15
**TEXAS** [1] - 1:2
**Texas** [6] - 1:7, 1:20, 1:21, 2:6, 2:12, 2:18
**THE** [30] - 1:11, 1:14, 2:3, 2:9, 3:3, 3:8, 3:12, 3:19, 5:10, 5:13, 5:15, 6:9, 7:25, 8:3, 12:18, 13:9, 13:11, 14:24, 15:4, 15:19, 18:3, 19:22, 20:12, 21:3, 21:15, 23:11, 23:22, 24:10, 24:24, 25:9
**they've** [5] - 4:18, 6:3, 9:10, 16:13, 24:18
**third** [5] - 4:7, 4:24, 5:19, 22:25, 24:20
**third-party** [3] - 4:7, 4:24, 5:19
**three** [1] - 21:12
**Thursday** [2] - 19:3, 23:13
**timing** [1] - 5:16
**today** [2] - 8:6, 22:24
**together** [1] - 25:6
**took** [19] - 4:22, 6:8, 9:25, 10:1, 10:7, 10:18, 10:20, 10:21, 16:11, 17:6, 17:13, 18:11, 18:15, 18:18, 18:24, 18:25, 19:13, 19:19, 23:4
**tools** [1] - 8:16
**totally** [1] - 23:1
**touched** [2] - 14:20, 14:21
**trade** [13] - 4:20, 6:22, 9:17, 10:13, 12:2, 12:11, 12:20, 12:21, 12:22, 14:5, 20:22, 22:18, 23:23
**trail** [1] - 18:5
**training** [8] - 17:4, 17:12, 22:13, 22:16, 22:22, 22:25, 23:13, 24:17
**transcript** [1] - 25:16
**TRANSCRIPT** [2] - 1:10, 1:25
**TRANSCRIPTION** [1] - 1:25
**trouble** [1] - 5:14
**truly** [1] - 11:12
**try** [2] - 20:5, 21:24
**trying** [6] - 7:19, 20:8, 20:20, 22:11, 23:14, 23:21
**tunnel** [1] - 8:21
**tunneled** [1] - 10:8

**turn** [9] - 7:15, 19:4, 19:7, 21:1, 23:16, 24:14, 24:20, 24:21, 24:23
**turned** [3] - 17:19, 17:25, 23:5
**turning** [4] - 7:9, 7:16, 23:17, 23:21
**turns** [1] - 9:6
**two** [4] - 3:22, 11:21, 16:25, 21:12
**types** [1] - 5:3

**U**

**ultimately** [3] - 12:16, 21:7, 24:18
**under** [2] - 18:12, 21:25
**UNITED** [1] - 1:1
**United** [1] - 22:3
**unpack** [2] - 21:24, 23:8
**unusual** [3] - 16:11, 16:16, 17:7
**up** [4] - 6:14, 7:3, 8:24, 10:19
**USB** [1] - 4:22
**uses** [1] - 22:1

**V**

**valid** [1] - 25:5
**various** [1] - 10:8
**vehicle** [2] - 24:13, 24:15
**vendor** [5] - 6:15, 6:17, 7:1, 7:4, 7:6
**versus** [1] - 15:13
**video** [2] - 7:22, 25:19
**view** [4] - 7:24, 10:15, 11:10, 21:13
**viewed** [1] - 6:18
**violated** [2] - 10:22, 12:1
**violating** [1] - 14:2
**VS** [1] - 1:6

**W**

**wants** [1] - 6:10
**web** [2] - 5:2, 17:10
**week** [1] - 13:24
**weigh** [1] - 18:1
**weight** [1] - 7:23
**whole** [1] - 13:2
**willing** [2] - 16:19, 19:4
**wise** [1] - 5:15
**witness** [1] - 5:5
**word** [2] - 24:12, 24:22
**workshop** [1] - 22:9
**wrestling** [1] - 12:16
**writ** [1] - 12:5

**Y**

**year** [1] - 14:19
**years** [5] - 22:15, 22:19, 22:21, 23:18, 25:2

**Z**

**ZAVITSANOS** [1] - 2:4
**zoom** [2] - 8:8, 19:4